RESOLUCIÓN
Examinada la Solicitud de Reconsideración y la Solici-tud de Celebración de Vista Oral en el caso de epígrafe, se declaran ambas “no ha lugar”.

Notifíquese inmediatamente a las partes por teléfono, por fax y por la vía ordinaria.

Lo acordó y ordena el Tribunal, y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Martínez Torres emitió un voto de conformidad, al cual se unió el *351 Juez Asociado Señor Kolthoff Caraballo. El Juez Asociado Señor Estrella Martínez emitió un voto de conformidad, al cual se unieron el Juez Presidente Señor Hernández Den-ton y la Juez Asociada Señora Rodríguez Rodríguez. La Jueza Asociada Señora Pabón Charneco emitió un voto particular disidente, al cual se unieron el Juez Asociado Señor Rivera García y el Juez Asociado Señor Feliberti Cintrón.
(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

Voto de conformidad emitido por el Juez Asociado Señor Martínez Torres, al cual se une el Juez Asociado Señor Kolthoff Caraballo.
Una mayoría de los miembros de este Foro actúa correc-tamente hoy al no reconsiderar y declarar “no ha lugar” una moción en la que se solicita una vista oral. Sin embargo, lo indicado en el voto disidente me obliga a expre-sarme de nuevo sobre el alcance del derogado Art. 31 de la Ley Núm. 76 de 24 de junio de 1975 (23 L.P.R.A. sec. 72c) y lo resuelto en Fund. Surfrider y otros v. A.R.Pe., 178 D.P.R. 563 (2010). De esta forma, se coloca en justa perspectiva el derecho aplicable al caso que nos ocupa.
I
El Art. 31, id., hoy derogado pero aplicable a esta con-troversia, establecía, en lo pertinente, que una vez se apela la concesión de un permiso de construcción ante la Junta Apelativa sobre Construcciones y Lotificaciones (J.A.C.L.), “el organismo o funcionario de cuya actuación se apela, suspenderá todos los procedimientos ante sí, relativos a la *352 actuación, determinación, o resolución de la cual se apela”. (Énfasis nuestro.) En Fuertes, Guillermety v. A.R.Pe., 130 D.P.R. 971, 981 (1992), se planteó que un permiso de cons-trucción expedido por A.R.Pe., que se apeló ante la J.A.C.L., no se podía revocar “sin una vista previa debido a que constituía un derecho de propiedad”. Al concluir que esa aseveración era incorrecta, esbozamos que
... una vez iniciada una apelación ante la Junta, los procedi-mientos ante A.R.Pe. quedan paralizados. A.R.Pe. emitió erró-neamente el Permiso de Construcción el 23 de septiembre de 1988, antes de que transcurrieran los treinta (30) días para apelar su resolución. Fuertes apeló en tiempo. La decisión de A.R.Pe. nunca advino final y firme. (Énfasis nuestro y en el original.) íd., pág. 982.
Ese principio de derecho se ratificó en Plaza Las Américas v. N & H, 166 D.P.R. 631, 654 (2005). En el caso que nos ocupa, se apeló la concesión del permiso de construc-ción en los treinta días que el Art. 31, supra, disponía. Así, la eficacia del permiso quedó en suspenso.
Me reconforta que, aunque tardara un mes desde que atendió el recurso por primera vez, la disidencia aborde al fin el alcance del Art. 31, íd. Sin embargo, es incorrecto afirmar que el injunction que contemplaba la ley se limi-taba a paralizar la efectividad de los permisos de construc-ción que se emitieron después de que se solicitó su revisión ante la J.A.C.L. Como vemos, hemos resuelto reiterada-mente que el Art. 28 de la Ley Núm. 76 (23 L.P.R.A. sec. 72), también podía usarse para impedir que continuara la construcción después de que el permiso estaba bajo la re-visión de la J.A.C.L., pues según el Art. 31, supra, la efec-tividad de ese permiso quedaba en suspenso.
II
Por otro lado, los hechos que ocupan hoy nuestra aten-ción son distintos a los que se dieron en Fund. Surfrider y *353 otros v. A.R.Pe., supra. Así lo reconoce la peticionaria Bioculture. Sin embargo, esta hace un análisis acomodati-cio y desacertado en su escrito de reconsideración sobre la figura de la legitimación activa.
En particular, Bioculture señala que “no existe diferen-cia entre lo declarado por el señor Rodríguez Collazo con lo argüido por el señor Richter en Fundación Surfrider”. So-licitud de reconsideración, pág. 3. Peor aún, la parte peti-cionaria entiende que “la evidencia de daño y la participa-ción que tuvo el Sr. Richter en el caso de Fundación Surfrider fue mayor a la ofrecida por el Sr. Rodríguez Collazo”. Id. Discrepo totalmente de ese raciocinio.
En Fund. Surfrider y otros v. A.R.Pe., supra, pág. 583, el señor Richter adujo que tenía problemas de distribución de agua y que entendía que ese problema se agravaría con el aumento de consumo que significaría la construcción del proyecto que impugnó. No trajo prueba al respecto. Se basó en una creencia suya sin base para sostenerla. Esos facto-res nos llevaron a resolver que el señor Richter carecía de legitimación activa. En específico, indicamos que
... el señor Richter alega que se verá afectado por la decisión administrativa ya que “entiende” que el alegado problema de distribución de agua se intensificará con la construcción del proyecto. Esta es una alegación especulativa y conclusoria. Además, como no se alegó la ubicación de la residencia al pre-dio del proyecto ni la proximidad, no podemos saber si el sector donde está ubicada la residencia se suple de la misma toma de agua que el proyecto. Fund. Surfrider y otros v. A.R.Pe., supra, pág. 588.
Ahora bien, si contrastamos lo expuesto en Fund. Surfrider y otros v. A.R.Pe., supra, con este caso, es forzoso concluir que el señor Rodríguez Collazo sí demostró osten-tar legitimación activa. En particular, el señor Rodríguez Collazo demostró mediante una declaración incontrover-tida que sufrió un daño económico como consecuencia del permiso de construcción concedido, pues no pudo vender su *354 proyecto de viviendas colindante con la finca de Bioculture. Su condición de colindante no está en disputa, a diferencia del señor Richter en Fund. Surfrider. Además, el daño pro-bado no es especulativo. Por el contrario, es claro, real, concreto y específico, tal como Fund. Surfrider y otros v. A.R.Pe., supra, requiere. El daño es personal e inminente, lo que lo cualifica para obtener un injunction, según el Art. 28, supra.
Además, se desprende de la transcripción de las vistas evidenciarías que el colindante Rodríguez Collazo contestó los pormenores del desarrollo de viviendas que tenía pro-puesto en su propiedad a instancias de la representación legal de Bioculture. Dicho de otro modo, la legitimación activa del colindante Rodríguez Collazo se demostró en el contrainterrogatorio que la representación legal de Biocul-ture le realizó. Véase Transcripción de vista evidenciaría de 9 de noviembre de 2009, págs. 97-100. Entonces, no cabe hablar de un testimonio acomodaticio {self serving).
No se puede perder de perspectiva que nos encontramos ante el testimonio bajo juramento de un testigo a quien el foro primario le creyó. Eso constituye evidencia directa. Regla 110(D) de Evidencia, 32 L.P.R.A. Ap. VI; S.L.G. Rivera Carrasquillo v. A.A.A., 177 D.P.R. 345, 357 (2009); Ramírez Ferrer v. Conagra Foods PR, 175 D.P.R. 799, 811 (2009); Trinidad v. Chade, 153 D.P.R. 280 (2001). Es una norma reiterada que “un tribunal apelativo no debe inter-venir con las determinaciones de hechos ni con la adjudi-cación de credibilidad del foro primario a menos que este último haya incurrido en error manifiesto, pasión, prejui-cio o parcialidad”. S.L.G. Carrasquillo v. A.A.A., supra, pág. 361. Véase, además, Flores v. Soc. de Gananciales, 146 D.P.R. 45, 49 (1998); Ortiz v. Cruz Pabón, 103 D.P.R. 939 (1975). Por eso, rechazo la invitación que se nos hace en la moción de reconsideración para que, como los prover-biales tres monitos, no oigamos, ni veamos ni hablemos de *355 la prueba que desfiló en el Tribunal de Primera Instancia y que establece el daño concreto, personal y real del correcu-rrido Rodríguez Collazo.
III
Todo lo anterior me lleva a concluir que no procede reconsiderar. Para ello no hace falta una vista oral. Los beneficios de una vista oral para ilustrar al Tribunal y es-clarecer la controversia son indudables. Sin embargo, su valor se desvanece después que el Tribunal decidió. Por eso, me parece tardía la solicitud de vista oral que la parte peticionaria nos hace en la etapa de la reconsideración.
En fin, he discutido el marco jurídico aplicable a la con-troversia que nos atañe hoy. Los precedentes están claros. Por eso, considero que llegar a una solución contraria ten-dría el efecto de trastocar “la confianza en nuestras insti-tuciones y en nuestro ordenamiento jurídico, el cual debe aspirar a garantizar un ambiente de uniformidad y consis-tencia en la aplicación del Derecho”. Brito Díaz et al. v. Bioculture et al., 183 D.P.R. 720, 746 (2011), voto particular disidente de la Jueza Asociada Señora Pabón Charneco, al cual se unieron los Jueces Asociados Señores Rivera García y Feliberti Cintrón.
Voto de conformidad emitido por el Juez Asociado Señor Estrella Martínez, al cual se unen el Juez Presidente Señor Hernández Denton y la Juez Asociada Señora Ro-dríguez Rodríguez.
Estoy conforme con la determinación de una mayoría de este Tribunal de denegar las solicitudes de reconsideración y de vista oral, presentadas por Bioculture Puerto Rico, Inc. (Bioculture).
*356 I
En nuestro voto de conformidad del pasado 9 de diciem-bre, tuvimos la oportunidad de impartirle consistencia a la jurisprudencia interpretativa de la derogada Ley Orgánica de la Administración de Reglamentos y Permisos, Ley Núm. 76 de 24 de junio de 1975 (23 L.P.R.A. sec. 71 et seq.).
En aquella ocasión, reafirmamos que el procedimiento establecido por el Art. 28 (23 L.P.R.A. sec. 72) es un meca-nismo estatutario, independiente, especial, sumario y limi-tado que permite la paralización de las obras o los usos que violen la ley. A.R.Pe. v. Rodríguez, 127 D.P.R. 793, 808-809 (1991).
En clara confirmación de que nuestro dictamen en nada priva de jurisdicción a la Rama Ejecutiva, reiteramos lo resuelto en A.R.P.E. v. Ozores Pérez, 116 D.P.R. 816, 822 (1986), donde expresamos que la utilización de los procedi-mientos sumarios que buscan dar la debida protección a la salud y al bienestar público, tal como el establecido en este articulado, no se circunscribe exclusivamente a situaciones de emergencia. Además, reiteramos que este mecanismo no desplaza la función administrativa, sino que es un meca-nismo provisional. Plaza Las Américas v. N & H, 166 D.P.R. 631, 647 (2005).
En el pasado descartamos el planteamiento —reciclado en el caso ante nos— de que las doctrinas de jurisdicción primaria y de agotamiento de remedios administrativos impiden la concesión del remedio sumario del Art. 28. Cier-tamente, la disponibilidad del procedimiento sumario esta-blecido en el referido Art. 28 no está supeditada a las nor-mas de jurisdicción primaria ni de agotamiento de remedios administrativos. Véase Mun. de Caguas v. AT & T, 154 D.P.R. 401, 415 (2001).
A pesar de esa realidad, los peticionarios nuevamente acuden en reconsideración, obviando la naturaleza y los *357 requisitos dispuestos en el Art. 28 para obtener el remedio contemplado en él.
El propósito del Art. 28 es proveer un mecanismo suma-rio rápido, independiente y complementario. A.R.Pe. v. Ro-dríguez, supra. Para llegar a la conclusión propuesta por Bioculture, tendríamos que pasar por alto que las órdenes de paralización solicitadas, al amparo del procedimiento especial de ese articulado, son un remedio independiente y diferente del interdicto tradicional. Así bien, a diferencia del interdicto tradicional, el mecanismo que brinda el Art. 28 no surge de la equidad, sino que debe ser evaluado se-gún su letra y su jurisprudencia interpretativa. Plaza Las Américas v. N & H, supra, pág. 650; A.R.Pe. v. Rivera, 159 D.P.R. 429, 444—445 (2003); A.R.Pe. v. Rodríguez, supra. Según el Art. 28 no se requiere alegación ni prueba de da-ños irreparables, sino sólo la determinación de que el de-mandado ha violado las disposiciones de la ley. A.R.Pe. v. Rivera, supra.
El Art. 28 establece los criterios que efectivamente cum-plieron los recurridos vecinos y colindantes del proyecto de Bioculture. Así lo comprobó nuestro análisis de la prueba. Me reafirmo en el contenido en mi voto particular previo. No es necesario abonar a una controversia en la que seis miembros de este Tribunal consideramos que los recurri-dos poseen legitimación para obtener el remedio interdic-tal especial alcanzado.
II
En nuestro voto particular tuvimos la oportunidad de analizar toda la prueba presentada por los recurridos ante el Tribunal de Primera Instancia. En su solicitud de recon-sideración, los peticionarios no rebaten la realidad de que los recurridos lograron satisfacer los requisitos del Art. 28 y de su jurisprudencia interpretativa. Nos reiteramos en nuestro análisis de la transcripción de las vistas evidencia- *358 rias, contenido en nuestro Voto Particular, págs. 739-743. Brito Díaz et al. v. Bioculture et al., 183 D.P.R. 720 (2011).
Finalmente, como pudo apreciarse en nuestro Voto Particular previo, la determinación de proveer “no ha lugar” al recurso de certiorari, presentado por los peticionarios, es-tuvo basada primordialmente en la letra clara de la ley aplicable, su jurisprudencia interpretativa y un detenido análisis de la transcripción de la prueba ante el Tribunal de Primera Instancia.
Una vez emitimos nuestro dictamen, a renglón seguido tomamos conocimiento judicial de las acciones administra-tivas, realizadas por varias agencias ejecutivas de la rama copeticionaria, contenidas en un Informe Final del Senado de Puerto Rico. Las paralizaciones y multas administrati-vas de las que tomamos conocimiento judicial y que, dicho sea de paso, no fueron rebatidas por la peticionaria en su Solicitud de Reconsideración, constituyen elementos váli-dos para adjudicar un reclamo según el Art. 28 y confirman la corrección del remedio otorgado por el Tribunal de Pri-mera Instancia.
No se trata de una mera ponencia de una agencia admi-nistrativa ante la Asamblea Legislativa. Aunque cierta-mente la aludida ponencia también revela un tratamiento incompatible en relación a este proyecto. Utilizar un in-forme legislativo para tomar conocimiento judicial de he-chos que no han sido rebatidos por los peticionarios y que abonan a confirmar la corrección del dictamen del foro in-termedio, en nada constituye una formulación de política pública. Por el contrario, representa un ejercicio de análi-sis válido y compatible con la adjudicación previamente enunciada.
Es por ello que una interpretación coherente de la juris-prudencia aplicable aquí discutida, nos obliga a concluir que actuó correctamente el Tribunal de Apelaciones al con-firmar el dictamen del foro primario. No existen justifica-ciones de peso para conceder un auxilio de jurisdicción ni *359 revocar la sentencia del Tribunal de Apelaciones. Mucho menos para conceder, en esta etapa, una vista oral que en nada aportará a la solución del caso de marras. Las consi-deraciones exógenas al Derecho que plantea Bioculture no me motivan a revocar un remedio provisional que protege el interés público. En atención a lo antes intimado, estoy conforme con denegar la reconsideración y la concesión de una vista oral.
III
Por las razones expuestas, es mi criterio que no procede expedir el auto de certiorari en los casos de epígrafe ni paralizar el efecto del interdicto especial emitido. En con-secuencia, estoy conforme con denegar la Solicitud de Re-consideración y la Solicitud de Vista Oral.
Voto particular disidente emitido por la Jueza Asociada Se-ñora Pabón Charneco, al cual se une el Juez Asociado Señor Rivera García y el Juez Asociado Señor Feliberti Cintrón.
El 21 de diciembre de 2011 compareció ante nos la com-pañía Bioculture Puerto Rico, Inc. (en adelante Bioculture) y nos solicitó que reconsideremos la Resolución que emiti-mos el 9 de diciembre de 2011. Véase Brito Díaz et al. v. Bioculture et al., 183 D.P.R. 720 (2011). A su vez, peticionó que se concediera la celebración de una Vista Oral en este Tribunal para atender de manera detenida y ponderada los asuntos de Derecho que surgieron en los tres (3) votos par-ticulares que fueron emitidos junto a nuestra Resolución.
Hoy, una mayoría de miembros de este Tribunal se re-húsa a reconsiderar el resultado al que llegamos en aque-lla ocasión. Mi posición en cuanto al caso de epígrafe no ha cambiado. A contrario sensu, la muy fundamentada Solici- *360 tud de Reconsideración presentada por Bioculture es alta-mente persuasiva y confirma las preocupaciones que ex-presé en mi Voto Particular Disidente anterior. Debido a ello, me veo en la obligación de disentir nuevamente del curso decisorio seguido por este Tribunal y así hacer cons-tar las repercusiones que tiene sobre las partes involucra-das en este caso y sobre nuestro ordenamiento en general la conclusión a la que llega el Tribunal.
I
A. Legitimación Activa y el precedente de “Fund. Surfrider y otros v. A.R.Pe.”, infra
Como muy bien señala Bioculture, nuestra Resolución de 9 de diciembre de 2011 debe ser reconsiderada, porque su efecto neto es modificar la normativa sobre legitimación activa que esbozamos en Fund. Surfrider y otros v. A.R.Pe., 178 D.P.R. 563 (2010). Como bien apunta Bioculture, la desviación del ratio decidendi de ese caso es tan marcada que se llega al punto de hacer prevalecer la opinión disi-dente emitida en aquella ocasión.
En el Voto de Conformidad del distinguido hermano Juez Asociado Señor Martínez Torres se le reconoció legiti-mación activa a solo uno (1) de los múltiples demandantes en los casos de epígrafe. Al colindante José Rodríguez Co-llazo se le reconoció su capacidad para entablar el pleito de autos porque “este colindante del proyecto testificó que no ha podido vender parte de su propiedad debido a que tres compradores potenciales se arrepintieron tras enterarse de la construcción de las instalaciones de Bioculture. ... Con esta declaración incontrovertida, el señor Rodríguez Co-llazo demostró tener un daño económico claro, real, con-creto y específico”. Brito Díaz et al. v. Bioculture et al., supra, págs. 730-731, voto de conformidad del Juez Aso-ciado Señor Martínez Torres. Sin embargo, como nos se-ñala Bioculture:
*361 [a]l reconocerle legitimación activa a Rodríguez Collazo, ex-clusivamente basado en el escueto testimonio de [e]ste a los efectos de que unos supuestos compradores —no identifica-dos— rehusaron comprarle un supuesto desarrollo de vivien-das que alegadamente [e]ste tenía planeado, se entra en una insalvable inconsistencia con el precedente recientemente adoptado ... en Fundación Surfrider v. ARPE, supra. Solicitud de reconsideración, pág. 2.
Comparto esa conclusión. Si comparamos las alegacio-nes del colindante-demandante Collazo en el caso de autos y del vecino-demandante Sr. Leon J. Richter en el caso de Fund. Surfrider y otros v. A.R.Pe., supra, surge con meri-diana claridad que es inconsistente reconocerle legitima-ción activa a uno y a otro no.
Peor aún, aunque asumiéramos que el señor Collazo de-mostró con sus alegaciones sufrir un daño claro, específico y no especulativo en los casos de epígrafe, mucho más claro resultaba el alegado daño del señor Richter en Fund. Surfrider y otros v. A.R.Pe., supra. En ese caso, Richter alegó:
(1) que reside “en el barrio Ensenada de Rincón, cerca del proyecto objeto del caso de autos”, (2) que actualmente está afectado por un problema de distribución de agua, (3) que “en-tiende que este problema se agravará con el aumento de con-sumo que significa este proyecto”, (4) “que sus intereses se verán afectados porque este tipo de desarrollo aumenta la densidad poblacional y por lo tanto rompe la armonía y altera las características del vecindario”. íd., pág. 587.
En cuanto a esas alegaciones, concluimos que:
... [e]l hecho de que [Richter] viva en el Barrio Ensenada no significa que resida en el mismo vecindario en d[o]nde estará ubicado el proyecto, pues un barrio puede ser tan extenso que contenga varios vecindarios. De hecho, ni siquiera se alegó que el peticionario reside en el mismo vecindario d[o]nde se desa-rrollaría el proyecto.
Por último, el señor Richter alega que se verá afectado por la decisión administrativa, ya que “entiende” que el alegado problema de distribución de agua se intensificará con la cons-trucción del proyecto. Ésta es una alegación especulativa y conclusoria. Además, como no se alegó la ubicación de la resi- *362 dencia ni la proximidad de ésta respecto al predio del proyecto, no podemos saber si el sector donde está ubicada la residencia se suple de la misma toma de agua que el proyecto. Estamos ante meras opiniones y conclusiones de los peticionarios sin datos que las sustenten.
Ante la insuficiencia de una base fáctica, no podemos deter-minar si el copeticionario, el señor Richter, sería afectado por la determinación administrativa.. Fund. Surfrider y otros v. A.R.Pe., supra, págs. 588-589.
Contrastemos estas expresiones con lo alegado por el colindante-recurrido señor Collazo en los casos de epígrafe. Este se limitó a alegar en una vista evidenciaría que varios compradores de unos terrenos que estaba desarrollando se arrepintieron del negocio al enterarse de la construcción de Bioculture en Guayama. En ningún momento se identifi-can estos compradores, ni se nos indica a cuánta distancia de la construcción de Bioculture están estos terrenos desarrollados. Ante este parco testimonio: ¿no estamos ante una alegación especulativa y conclusoria? ¿No esta-mos ante meras opiniones y conclusiones sin datos que las sustenten?
Por otra parte, a diferencia del señor Richter, el colin-dante-recurrido Collazo ni siquiera vive en el mismo barrio en el cual Bioculture construía sus instalaciones. A su vez, testificó que el proyecto de construcción queda entre once (11) y veinte (20) minutos en carro de su propiedad. Véase Solicitud de reconsideración, págs. 2-3. ¿No son estos fac-tores que deberíamos tomar en consideración para precisa-mente concluir que el colindante carecía de legitimación activa?
Como nos señala Bioculture en su Solicitud de Reconsi-deración, si se sostiene que la alegación self-serving que realizó el señor Collazo en la vista evidenciaria fue sufi-ciente para reconocerle legitimación activa, estaríamos aplicando directamente la Opinión Disidente que se emitió en Fund. Surfrider y otros v. A.R.Pe., supra. En específico, *363 expresó la compañera Jueza Asociada Señora Fiol Matta en aquella ocasión:
¿[D]e qué nos sirve saber el lugar exacto de la residencia del señor Richter si nadie puso en duda su condición de vecino del lugar del proyecto? ¿Para corroborar si el daño que alega su-frir era cierto? ¿Y si hubiéramos conocido el lugar exacto, de qué manera podría este Tribunal confirmar los daños sufridos por el señor Richter? ¿Cuán lejos es lejos para demostrar que los abastos de agua se verían afectados? No podemos exigir prueba pericial sobre esto para el propósito de evaluar la legi-timación activa. Fund. Surfrider y otros v. A.R.Pe., supra, pág. 599.
Lamentablemente, al negarse a reconsiderar nuestra Resolución de 9 de diciembre de 2011, este Tribunal deja huérfana de contestación la interrogante de cómo es posi-ble que el señor Richter no tuviera legitimación activa en Fund. Surfrider y otros v. A.R.Pe., supra, pero el señor Co-llazo en los casos de epígrafe sí la ostenta. ¿Sobrevive Fund. Surfrider y otros v. A.R.P.e., supra, en su totalidad? ¿O su ratio decidendi se encuentra en algún punto entre la opinión mayoritaria y la opinión disidente de ese caso?
Por mi parte, dejo meridianamente claro que seguiré aplicando el precedente de Fund. Surfrider y otros v. A.R.Pe., supra, según fue decidido originalmente. Para que un demandante pueda alegar que un proyecto de construc-ción lo ha afectado tendrá que demostrar un daño claro, específico y no especulativo. De lo contrario, estaríamos permitiendo que alegaciones imprecisas, generales, espe-culativas y carentes de base fáctica abran las puertas para que cualquier persona impugne un proyecto de construc-ción que no sea de su agrado. Las bondades y desventajas de un proyecto de construcción no pueden ser cuestionadas en los foros judiciales por demandantes sin legitimación activa. Esa es la norma de Fund. Surfrider y otros v. A.R.Pe., supra, y así la continuaré aplicando.
*364 B. El Art. 31 de la Ley Núm. 76 (23 L.P.R.A. sec. 72c)
En su Voto de Conformidad para nuestra Resolución de 9 de diciembre de 2011, el compañero Juez Asociado Señor Martínez Torres expresó que Bioculture estaba impedida de continuar construyendo su proyecto en Guayama por-que:
En el caso que nos ocupa, Roberto Brito Díaz y otros presen-taron una apelación ante la J.A.C.L. dentro del término de 30 días que disponía el Art. 31 de la Ley Núm. 76, supra. Con ello, se suspendió la eficacia del permiso concedido. No es el Tribunal de Primera Instancia el que invalidó el permiso concedido. Su vigencia estaba suspendida por mandato del ci-tado Art. 31 de la Ley Núm. 76. El tribunal se limitó a hacer cumplir ese mandato y evitar una construcción ilegal, como disponía el Art. 28, supra. Brito Díaz et al. v. Bioculture et al., supra, pág. 725, voto de conformidad del Juez Asociado Señor Martínez Torres.
En aquel entonces, no consideré necesario atender los señalamientos en cuanto a ese articulado que fueron esbo-zados en el Voto de Conformidad. La razón es sencilla. ¿Para qué expresarme en cuanto a la alegada violación de un artículo que ningún tribunal ni ninguna parte en el pleito habían atendido, más aún cuando concluí que los demandantes recurridos carecían de legitimación activa para incoar el pleito? ¿Si los demandantes recurridos no poseían llave para entrar al foro judicial, por qué expresar-nos en cuanto a los fundamentos para emitir un injunction?
Sin embargo, en su Solicitud de Reconsideración, Bio-culture presenta excelentes argumentos de Derecho que cuestionan seriamente lo expresado en el Voto de Confor-midad del hermano Juez Asociado Señor Martínez Torres. A continuación, cito in extenso los argumentos esbozados por Bioculture:
Según el Voto de Conformidad, el Artículo 31 de la Ley Nú-mero 76 del 24 de junio de 1975, según enmendado, 23 L.P.R.A. § 72c, y su jurisprudencia interpretativa creaban una *365 especie de interdicto ipso jure que paralizaba la eficacia del permiso apelado, hasta tanto la JACL resolviese los méritos del recurso. ... Sin embargo eso no es lo que surge del texto del citado artículo, ni puede ser así interpretado.
El inciso “a” del Artículo 31, disponía en lo pertinente, que “[u]na vez radicado un escrito de apelación ante la Junta de Apelaciones y notificado el mismo por el apelante, el orga-nismo o funcionario de cuya decisión se apela, suspenderá to-dos los procedimientos ante sí, relativos a la actuación, deter-minación o resolución de la cual se apela” (énfasis suplido). Surge pues de la letra clara del estatuto que la paralización aludida va dirigida contra la agencia cuya decisión se apela (en este caso ARPE) y no contra el tenedor del permiso. Más aún, lo que queda paralizado es el procedimiento, es decir, la expedición de dictámenes posteriores relacionados con la ac-tuación que se apela y no el permiso expedido. Véase ARPE v. Ozores Pérez, 116 D.P.R. 822 (1986) (Per Curiam), donde esta Honorable Curia indicó claramente que “[e]l Art. 31 (23 L.P.R.A. sec. 72c) tenía el único efecto de suspender ante la agencia los procedimientos relativos a la determinación de la cual se apeló” (énfasis suplido).
Del texto estatutario no surge que el permiso apelado quede paralizado o que el concesionario de dicho permiso vea sus derechos como tal limitados de manera alguna ante una ape-lación administrativa o durante el término de la apelación.
El caso de Fuertes Guillermety v. ARPE, 130 D.P.R. 971 (1992), citado a la página 5 del Voto de Conformidad aquí dis-cutido, versa en torno a la validez de un permiso de uso expe-dido mientras estaba pendiente una apelación ante la JACL contra un permiso de construcción. Id., pág. 981-982. Fuertes Guillermety de ninguna manera resuelve que el tenedor del permiso de construcción no podía continuar construyendo por el mero hecho de que se había interpuesto una apelación ante la JACL como se indica en el Voto de Conformidad aludido. Lo mismo en Plaza las Américas, Inc. v. N & H, S.E./Tiendas Sedeco, 166 D.P.R. 631 (2005). Allí ARPE había expedido el permiso en cuestión luego de apeladas ante la JACL “una Re-solución para aprobar un anteproyecto de construcción” y una autorización de la “preparación de los planos de construcción correspondientes para la remodelación de un edificio cercano al centro comercial Plaza Las Américas”. Id. a las págs. 638-639. (énfasis suplido). Ante tales circunstancias, diferentes a las del caso de autos, el Tribunal, correctamente, ordenó la paralización de la construcción de Sedeco, al amparo del Artí- *366 culo 31, porque el permiso de construcción había sido expedido después de radicado el recurso de apelación administrativa. La cronología en nuestro caso es distinta a la de Fuertes Guiller-mety y a la de Plaza las Américas. El permiso al amparo del cual [Bioculture] construía fue expedido por ARPE previo a la apelación. Distinto hubiese sido el caso si, por ejemplo, ARPE hubiese expedido el permiso de uso mientras estaba pendiente la apelación contra el permiso de construcción. Este no es nuestro caso. ARPE, en efecto, suspendió los procedimientos relacionados al permiso de construcción y no incurrió en pro-cedimientos ulteriores, por lo cual el Artículo 31 no fue vulne-rado de manera alguna y la construcción llevada a cabo por [Bioculture] era legal. Solicitud de reconsideración, págs. 5-6.
Ante los señalamiento esbozados por Bioculture, no debe sorprendernos que ni el Tribunal de Primera Instan-cia, ni el Tribunal de Apelaciones, ni los demandantes re-curridos en el caso de epígrafe utilizaran el Art. 31 de la Ley Núm. 76, supra, para paralizar la construcción de Bio-culture o para sostener que su permiso de construcción era inválido.
No comparto la apreciación del compañero Juez Aso-ciado Señor Martínez Torres que el artículo aludido inva-lida el permiso de construcción de Bioculture. Más aún, no comprendo cómo un tribunal puede paralizar un proyecto de construcción al amparo del Art. 31 de la Ley Núm. 76, supra, si los demandantes carecen de legitimación activa, a menos que, como expone Bioculture, ese artículo creaba un interdicto que operaba ex propio vigore. No comparto esa interpretación estatutaria.
C. La utilización de Informes Legislativos como herra-mientas de adjudicación
Finalmente, la Solicitud de Reconsideración presentada por Bioculture cuestiona de manera fundamentada las ra-zones por las cuales se citaron Informes y Ponencias pre-sentadas ante la Rama Legislativa en el Voto de Conformi-dad del Juez Asociado Señor Estrella Martínez.
En específico, sostiene Bioculture que:
*367 Entendemos respetuosamente que el Voto Particular de Conformidad se aparta del análisis de criterios jurídicos para adoptar las determinaciones de una Comisión Senatorial que evidentemente está viciada en contra del proyecto de [Bioculture]. ...
M[á]s a[ú]n, este Honorable Tribunal ha reconocido en múl-tiples ocasiones la limitada facultad de los tribunales apelati-vos sobre la utilización de evidencia no admitida en el foro primario. A tales efectos, es impactante la utilización, por este Ilustrado Foro, de un informe aprobado por el Senado de Puerto Rico -que no fue ni siquiera ofreció [o] en evidenciacomo elemento fundamental del Voto Particular de Conformidad ... La utilización del referido informe del Senado, que no es parte del récord judicial, en apoyo de un Voto Particular de Confor-midad envía un mensaje equivocado de práctica apelativa. So-licitud de Reconsideración, págs. 10-11.
Nuevamente, comparto las preocupaciones que levanta Bioculture en su Solicitud de Reconsideración. Como ex-presé en mi anterior Voto Particular Disidente, “cuando ante este Foro comparece una parte, y argumenta que en Derecho procede que se falle a favor suyo, no podemos uti-lizar fuentes que van más allá del Derecho para resolverle en contra. Estas fuentes contaminan la sagrada labor cons-titucional de este Tribunal”. Brito Díaz et al. v. Bioculture et al., supra, pág. 756, voto particular disidente. A su vez, más que un mensaje equivocado de práctica apelativa, la utilización de los aludidos informes envía un mensaje equi-vocado a la ciudadanía en general, ya que confunde las fronteras entre lo legislativo y lo jurídico.
Finalmente, el compañero Juez Asociado Señor Estrella Martínez expresó en su Voto de Conformidad que al Art. 28 de la Ley Núm. 76, supra, no le aplica la norma de legiti-mación activa según esbozada en Fund. Surfrider y otros v. A.R.Pe., supra. En particular, el Juez Estrella Martínez entiende que ese artículo crea una situación especial en donde los demandantes no tienen que demostrar haber su-frido un daño claro y específico para lograr acceso al foro judicial. Como señala Bioculture, si se sostiene esa posi- *368 ción “[s]e daría entonces un extraño fenómeno de que los demandantes estaban legitimados para obtener un reme-dio interdictal provisional ante el TPI pero no están legiti-mados para impugnar el permiso concedido a [Bioculture] ante el foro con facultad para adjudicar la controversia de manera definitiva”. Solicitud de reconsideración, pág. 9.
II
En conclusión, este Tribunal debió reconsiderar el resul-tado al cual llegamos en Brito Díaz et al. v. Bioculture et al., supra. Me preocupan seriamente las repercusiones de ese resultado, tanto para nuestra normativa de legitima-ción activa, como para nuestra imagen como Foro interpre-tativo final del Derecho en Puerto Rico. Un caso tan com-plejo como el de epígrafe, el cual presenta situaciones de alto interés público y que causó la publicación de tres (3) votos con posturas de Derecho diversas y encontradas, como mínimo ameritaba la concesión de una vista oral por parte de este Tribunal. De esa forma, hubiéramos estado en posición de atender detenidamente un caso en el cual surgieron situaciones de Derecho noveles y complejas en el seno de este Foro.
Particularmente, debemos recordar que en ocasiones re-cientes hemos reconocido el valor intrínseco de la celebra-ción de vistas orales. En In re Reglamento Tribunal Supremo, 183 D.P.R. 386 (2011), el compañero Juez Asociado Señor Martínez Torres expresó que:
Las vistas orales son un mecanismo valioso para la delibe-ración colegiada en todo foro apelativo. Por eso, el nuevo Re-glamento enfatiza y revisa el procedimiento para que el Tribunal pueda celebrar más vistas orales en casos meritorios. Ese es un reclamo que la comunidad ha hecho por décadas.
¿Qué mejor caso para inaugurar la nueva política de *369 puertas abiertas en este Foro que uno como este que causó tanta división entre los compañeros Jueces?
Por todo lo expuesto, mi conciencia me dicta que debo disentir nuevamente. A tales efectos, declararía “ha lugar” tanto la Solicitud de Reconsideración como la Solicitud de Vista Oral.